Argued and submitted January 28, affirmed June 23, 2010

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

RONNIE ALLAN POTTER,
*Defendant-Respondent.*

Linn County Circuit Court
08112367D; A141927

234 P3d 1073

Jennifer S. Lloyd, Attorney-in-Charge, Criminal Appeals, argued the cause for appellant. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Jedediah Peterson, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

The state appeals an order of the trial court dismissing assault charges against defendant on the basis that the charges were barred by former jeopardy. Defendant was charged in a single indictment with one count of attempted second-degree assault, ORS 163.175; two counts of felony fourth-degree assault, ORS 163.160(3);[1] and one count of contempt of court for violating a restraining order, ORS 33.015. At the state's request, the contempt charge was bifurcated from the others and tried to the court. Defendant was convicted of that charge. He then moved to dismiss the assault charges on former jeopardy grounds, and the court granted the motion. On appeal, the state argues that, because the assault charges were not committed in the "same criminal episode" as the acts constituting contempt of court, ORS 131.515(2)[2] did not bar trial of defendant on the assault charges. Alternatively, the state argues that defendant effectively consented to separate trials. We affirm.

Defendant and S, the alleged victim in this case, were, at some point, involved in a romantic relationship. In July 2008, S obtained a restraining order against defendant. Among other things, that order prohibited defendant from "[c]ontacting, or attempting to contact, [S] in person (directly or through third parties)." (Boldface and italics omitted.) It also stated that defendant "shall not knowingly be or stay within" 150 feet of S. (Boldface omitted.)

On several occasions between August and November 18, 2008, the date of the charged offenses in this case, defendant tried to get S to remove the restraining order. On November 18, defendant approached S at a park, where she had gone to get a meal provided by a local church. He walked

---

[1] For convenience, we refer to the attempted second-degree assault charge and the two fourth-degree felony assault charges collectively as "the assault charges" throughout this opinion. We refer to the conduct that gave rise to those charges as "the assault."

[2] ORS 131.151(2) provides:

"No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court."

up to her as she was sitting on a bench waiting for the dinner to arrive and began talking to her. Later that evening, S left the park and went to her daughter's house to pick up a bicycle that she had borrowed from defendant. She then took the bicycle to some friends' house because she knew that defendant would go there to pick it up.

She was on the back porch of the friends' house taking a trailer off the bike when defendant suddenly came out the back door of the house and began arguing with her. Another man was also there; he knew of the history between defendant and S and expressed some concern. Eventually, however, defendant convinced the man that he was not going to hurt S, and the man left. Defendant continued to argue with S—asking her where she had been, why her hair was wet, and with whom she had taken a shower. S told him to calm down and turned to go into the house. As she did, defendant grabbed her by the throat and threw her against a post that supported the porch, which resulted in injuries to her face and a black eye.

Based on those events, defendant was charged in an indictment with the following offenses: (1) attempted second-degree assault for attempting to cause physical injury to S by means of a dangerous weapon (the post), ORS 163.175; (2) felony fourth-degree assault on the theory that defendant caused physical injury to S and was previously convicted of assaulting S, ORS 163.160(3)(a); (3) felony fourth-degree assault on the theory that defendant caused physical injury to S and was previously convicted at least three times of assaults involving domestic violence, ORS 163.160(3)(b); and (4) contempt of court for "unlawfully and willfully" disobeying the restraining order "by having personal contact with [S]," ORS 33.015(2)(b).

Defendant was arrested and placed in custody on those charges on December 3, 2008; two weeks later, on December 23, 2008, he was convicted and sentenced to 60 days in jail on an unrelated charge. He was scheduled to be released from custody on that conviction on February 13, 2009.

Meanwhile, defendant's trial in this case was set for February 24. At a pretrial hearing on February 2, defense

counsel requested a continuance of the February 24 trial date due to a scheduling conflict. In the course of considering that request, the court and the parties discussed the implication of the requirement that an in-custody defendant be brought to trial within 60 days after the defendant's arrest.[3] From the colloquy that ensued, it appears that the parties and the court were operating under the understanding that defendant would be entitled to release when his earlier sentence was served—that is, on February 13—because more than 60 days had elapsed from the date of his arrest.[4] Concerned about that possibility, the prosecutor said:

> "[I]f we get to the point where we're [going to] release him, the state's going to request a bench trial before the 13th on the contempt charge and just sever it from the other ones. Because, frankly, I—I think he's dangerous on the street, Your Honor."

After determining that defendant was not willing to waive the 60-day trial deadline, the court, without expressly ruling on the continuance request, then sent the parties back to the court assigned to handle domestic-violence-related cases, noting that that court could set a trial date on the contempt charge "within a week probably on their docket."

Before the domestic-violence court, the prosecutor, after explaining the circumstances above, stated:

> "So, I think we're at the point where either if [defendant] is unwilling to waive, the State is going to request that the trial be bifurcated and that the Court hear the contempt of court charge on or before the 13th of February because, frankly, he's already * * * given some indication that he intends to [flee]."

---

[3] The court and the parties presumably were referring to ORS 136.290(1), which generally requires the state to bring an in-custody defendant to trial within 60 days after the defendant's arrest, unless the defendant expressly consents to a continuation of the trial or a statutory exception applies. If trial does not commence within the 60-day period, the court must release the defendant pending trial. ORS 136.290(2).

[4] That understanding may have been incorrect. *See* ORS 136.295(1) ("ORS 136.290 does not apply to * * * prisoners serving sentences resulting from prior convictions."); ORS 136.295(3) ("Any reasonable delay resulting from * * * other motion or appeal by the defendant shall not be included in the 60-day period.").

Defense counsel responded,

> "I think that the purpose that it was brought back over to this courtroom this morning was that [the prosecutor] said he wanted to sever off the contempt count. Judge Bassinger felt that you would have more flexibility in terms of dates. And so I think that it was brought over here to
>
> "\* \* \* \* \*
>
> "\* \* \* set a date. I mean, I think the issue with the 60 days is it's—it ran out as of today, and so I think he has to be conditionally released. If there is a contempt trial and he gets convicted of contempt and re-sentenced, then he would be back into custody, but I think he has to be released based on 60 days."

The parties and the court then settled on a trial date of February 10—before defendant's scheduled release date on his earlier conviction—for a bench trial on the contempt charge and agreed that the other charges would be placed back on the "duty court docket" for February 23.

The contempt trial was held as scheduled on February 10, and the victim, who was the only witness, testified to the events described above.[5] During his opening statement and again in closing argument, the prosecutor argued that "the incidents" of November 18th were a violation of the restraining order, referring to "two separate incidences," but without elaborating as to the details of those incidents or specifically mentioning the alleged assaults.

The court found defendant in criminal contempt for violating the restraining order and sentenced him to six months in jail. The court reasoned as follows:

> "And the testimony by [S], the only witness in this case, was that subsequent to the filing of the restraining order she had multiple contacts with [defendant] requesting her to lift the \* \* \* restraining order, \* \* \*, or have it dropped. And particularly she testified to two occasions on November 18th,

---

[5] On cross-examination, defense counsel asked, "So the thing that you're really complaining about as far as violating the restraining order is \* \* \* when he assaulted you, right?" She responded, "I'm not the one complaining. I didn't go to the police[.]"

one at Monteith Park where he came up to her, she was sitting on the bench, he walked up to her, started talking, she indicated he was intoxicated at the time. And that then she left, went to [another residence] and [defendant] again showed up at the residence there, same date later in the day, evening, and had contact with her on the back porch. Also that she had—that he had continued to request that she drop the restraining order.

"* * * * *

"So, based on the evidence I find the defendant guilty of the contempt of court from November 18th of last year."

Defense counsel asked the court for clarification as to whether the court was "basing that on the contact on the back porch at the * * * residence[.]" The court replied, "I'm basing that on both the contact at Monteith park and the contact at the residence."

Defendant subsequently moved to dismiss the assault charges on the statutory ground of former jeopardy,[6] arguing that, because the state elected to try the contempt count and "presented evidence pertaining to the same criminal episode" as the assault charges, and "[t]he trial judge found defendant guilty of contempt based upon defendant's contact with the alleged victim of the assault [S] at the time of the alleged assault," the assault charges must be dismissed. After reviewing an audio recording of the contempt trial,[7] the court granted defendant's motion, stating:

"The evidence presented at Trial by the State included two incidences of contact by the Defendant with the victim both occurring on November 18, 2008; one at the park and one at the residence where the three assault charges are also alleged to have occurred. At the conclusion of the Contempt Trial, [defense counsel] asked Judge Broyles about which contact her guilty finding was based [on] and she said that her finding of guilty was based on both incidents.

---

[6] Although defendant also cited the state and federal constitutions in his written motion before the trial court, he did not present any separate constitutional arguments, nor does he argue on appeal that those sources provide an alternate basis for the trial court's ruling in his favor. Accordingly, we do not address them.

[7] The motion to dismiss was decided by a different judge from the judge who presided over defendant's contempt trial.

> "The State could have easily avoided former jeopardy issues, by presenting only the evidence concerning the contact at the park. Alternatively, pursuant to *State v. Delker*, 123 Or App 129[, 858 P2d 1345 (1993), *rev den*, 318 Or 326 (1994),] the State could have presented evidence of both contacts on November 18, 2008 but not the evidence of the alleged assaults. The State chose not only to put on evidence of the assault charges, but did so in such detail and specificity such that the 'contact' at the residence sounded like an assault trial."[8]

The court also concluded that, although defense counsel did not object to the state's motion to sever the contempt charge, defendant had not waived his "[c]onstitutional rights under the circumstances presented in this case."

The state appeals, raising two alternative arguments: (1) that a separate trial of defendant on the assault charges is not precluded by ORS 131.515(2), "[b]ecause defendant's contempts of court * * * and his later assault of the victim were not part of the 'same criminal episode,'" within the meaning of that statute; and (2) that defendant waived any challenge to separate prosecutions by "acquiescing" to the severance of the contempt count for trial.

We begin with the state's first argument. As noted, ORS 131.515(2) provides:

> "No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court."

A defendant has the burden to prove all of the elements of a former jeopardy claim. *State v. Knowles*, 289 Or 813, 822, 618 P2d 1245 (1980); *State v. Fore*, 185 Or App 712, 715, 62 P3d 400 (2003). The parties' dispute in this case centers on whether defendant proved that the assault charges were "based upon the same criminal episode" as the contempt charge for which he had already been prosecuted, thus precluding a separate prosecution of defendant on those

---

[8] Although the court did not cite ORS 131.515(2), based on the arguments presented to the court and the court's reasoning, the parties understand that statute to be the basis for the court's ruling. We share that understanding.

charges.[9] That is a question of law that, in turn, may depend on predicate findings of historical fact. If the trial court made such findings, we defer to them to the extent they are supported by evidence in the record. *Fore*, 185 Or App at 716-17. Where findings of fact are not made on all the issues, and there is evidence for which particular facts could be decided in more than one way, we will presume that the facts were decided in a manner consistent with the trial court's decision. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

■■ " 'Criminal episode' " is defined by ORS 131.505(4) as "continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective." It has been held to be synonymous with the phrase "same act or transaction," which the Oregon Supreme Court described as follows:

> " '[T]wo charges arise out of the same act or transaction if they are so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge.' "

*State v. Boyd*, 271 Or 558, 565-66, 533 P2d 795 (1975) (quoting *State v. Fitzgerald*, 267 Or 266, 273, 516 P2d 1280 (1973)). As the court explained in *Boyd*, as an initial guideline,

> "if a complete account of one charge necessarily includes details of the other charge, the charges must be joined to avoid a later double jeopardy defense to further prosecution. We construe this test of interrelated events as necessitating joinder only where the facts of each charge can be explained adequately only by drawing upon the facts of the other charge. Stated differently, the charge[s] must be cross-related."

*Boyd*, 271 Or at 566 (footnote omitted; emphasis omitted).

Thus, we first consider whether "a complete account of one charge *necessarily* includes details of the other." *Id.*

---

[9] The other two elements comprising a former jeopardy challenge under ORS 131.515(2)—that the offenses were known to the prosecutor at the commencement of the first prosecution, and that venue was proper in a single court—are not disputed in this case.

(emphasis added). If the answer to that question is "yes," separate prosecution of the charges violates ORS 131.515(2). However, the obverse is not necessarily the case. That is, if the charges are not in that sense "cross-related," they still may be part of the "same criminal episode" for purposes of precluding successive prosecution under ORS 131.515(2). Factors that may bear on that issue include whether the conduct comprising the offenses is "continuous and uninterrupted," the extent to which they are temporally and spatially linked, and whether they are designed to serve a single criminal objective. ORS 131.505(4). In evaluating those factors, a court must also consider the legislative policy embodied in ORS 131.515(2), which "prohibits the reprosecution of factual issues already resolved by an earlier prosecution." *State v. Lyons*, 161 Or App 355, 362, 985 P2d 204 (1999).

*Lyons* illuminates the latter principle. There, we construed ORS 131.515(2) to determine whether an offense under the then applicable version of the Oregon Racketeer Influenced and Corrupt Organizations Act (ORICO)[10] and the predicate acts required for prosecution under that scheme were part of the same criminal episode. We determined that, although proof of the ORICO violation depended on proof of the predicate crimes, proof of the predicate crimes did not in any way depend on proof of the ORICO violation. Thus, for purposes of *Boyd's* unitary transaction test, the charges were related, but not 'cross-related.' " *Lyons*, 161 Or App at 363. In those circumstances—that is, where "the application of the unitary transaction test may fail to yield a clear answer as to whether successive prosecutions are barred by ORS 131.515(2)"—we explained that

> "the jeopardy concern should be resolved by considering the defendant's right, as embodied in ORS 131.515(2), 'to be free from being required to answer more than once for the

---

[10] *Lyons* involved the pre-1997 version of ORICO, ORS 166.715 to 166.735. In 1997, the legislature amended ORS 166.715(4) to provide:

"Notwithstanding ORS 131.505 to 131.525 or 419A.190 or any other provision of law providing that a previous prosecution is a bar to a subsequent prosecution, conduct that constitutes an incident of racketeering activity may be used to establish a pattern of racketeering activity without regard to whether the conduct previously has been the subject of a criminal prosecution or conviction * * *."

> same act or transaction[.]' [*Boyd*, 271 Or at 569]. In other words, in using the phrase 'based upon the same criminal episode,' the legislature established a policy of finality for the defendant's benefit that prohibits the reprosecution of factual issues already resolved by an earlier prosecution. *See id.* at 567 (noting that a failure to join in first proceeding conduct that is part of the same criminal episode is 'inexcusable and therefore a subsequent attempt by the state to prosecute would constitute undue harassment'). The consideration here focuses on the conduct on which criminal culpability rests in the later prosecution and whether that conduct already has been litigated in a previous prosecution. *Id.* at 570-71."

*Lyons,* 161 Or App at 362 (emphasis omitted). We concluded that that consideration would bar the state's use of the defendant's prior convictions as predicate acts for the ORICO charge, because the conduct charged for purposes of the ORICO violation was "wholly compris[ed]" of acts resolved by the prior convictions. *Id.* at 364. "Thus, the ORICO prosecution * * * require[d] the reprosecution of factual issues already resolved by the earlier cases and, in that light, ask[ed] defendant to answer twice for the same conduct." *Id.* at 365.[11]

That is not to say, however, that charges must be joined simply because factual details of one charge are *admissible* at trial on the other charge. *State v. Stolz,* 106 Or App 144, 148, 806 P2d 715 (1991).

■    With those principles in mind, we turn back to the present case. As an initial matter, we agree with the state that this is not a case where the charges are *necessarily* cross-related. As the state points out, a complete account of the contempt charge against defendant does not necessarily include details of the assault; conversely, a complete account of the assault charges does not have to include details of the conduct constituting contempt of court. In other words, it was *possible* for the state to prove that defendant was in contempt of court for violating the restraining order without including the facts of the assault.

---

[11] Because the trial court in *Lyons* had failed to take evidence on the reasonable knowledge element, we vacated the defendant's ORICO conviction and remanded to the trial for an evidentiary hearing on that issue. 161 Or App at 366.

Contempt, as applicable here, involves a willful "[d]isobedience of, resistance to or obstruction of the court's authority, process, orders or judgments." ORS 33.015(2)(b). The indictment charged defendant with one count of contempt for unlawfully and willfully disobeying the court's restraining order by having personal contact with S. Thus, it was possible for the state to establish the contempt by showing that defendant—having knowledge of the order—"personally contacted" S by approaching her at the park and talking to her. In addition, it was possible for the state to establish another act of contempt when defendant contacted S on the porch behind her friends' house and began arguing with her. In neither instance were details of the assault strictly necessary for the state to establish that defendant violated the restraining order.

Likewise, the facts underlying the contempt—that is, that defendant violated the restraining order by personally contacting S at the park and at the residence—were not necessary to give a complete account of the conduct that gave rise to the assault charges. In short, although it might provide helpful context, it was not necessary for the state to prove the existence of the restraining order in prosecuting the assault charges against defendant.

As explained above, however, that does not resolve the issue. Rather, because "application of the unitary transaction test * * * fail[s] to yield a clear answer," we must consider whether the factual issues underlying the assault charges were actually resolved in the earlier contempt prosecution.[12] *Lyons*, 161 Or App at 362. In that vein, defendant argues that this case is analogous to *State v. McIntyre*, 94 Or App 240, 764 P2d 972 (1988). In *McIntyre*, the defendant

---

[12] *Stotz* is not to the contrary. In that case, there was a restraining order that required the defendant to vacate certain premises; when the defendant refused to leave, police officers attempted to arrest him, and he resisted. 106 Or App at 146. After he was acquitted of criminal contempt for violating the restraining order, he moved to dismiss the resisting arrest charge, arguing that it was based on the same criminal episode under ORS 131.515(2). We concluded that the charges were not cross-related under *Boyd*, because the elements of the two charges were different and the facts of each could be proven without reference to the facts of the other. *Id.* at 148. We then went on to consider, however, whether there was a single criminal objective underlying the defendant's conduct and concluded that there was not. *Id.* at 148-49.

appealed his conviction for burglary, assigning error to the trial court's denial of his motion to dismiss the charge based on former jeopardy. He argued that the same criminal episode had been previously litigated when he was found in contempt of court for violating a restraining order that prohibited him from contacting his former girlfriend or coming to her apartment. *Id.* at 242. At the contempt trial, there was evidence of three separate occasions of the defendant violating the restraining order, including the "June 9" incident for which defendant was also charged with burglary. (On that occasion, the defendant's former girlfriend found the defendant in her apartment and discovered that one of the doors to the apartment had been kicked in.) In finding the defendant guilty of contempt, the contempt court specifically described the first contact—which occurred when the defendant was released from jail—but further found, " 'I think it is clear also that there were *other contacts* that were in violation following that.' " *Id.* (emphasis added).

On appeal, we reversed the trial court's denial of the defendant's motion to dismiss the burglary charge. Noting that the "key question * * * is whether the contempt proceeding litigated the same event as the burglary prosecution," *id.* at 243, we explained:

> "There were only three incidents testified to during the contempt proceeding. By finding that one described contact *plus* 'other contacts'—in the plural—occurred, the contempt court *must* have found all three."

*Id.* at 244 (first emphasis in original; second emphasis added).[13] As a result, we concluded, prosecution of the defendant for burglary violated ORS 131.515(1)[14] and (2). *Id.* Implicit in that conclusion is that, because the contempt court did not identify the specific June 9 *conduct* that constituted the *contact* for purposes of the contempt finding—and, because, given the factual circumstances and what the court

---

[13] Accordingly, we declined to presume under *Ball*, 250 Or at 487, that, although the trial court made no findings of fact, in light of its ultimate conclusion, it must have found that the burglary episode was *not* a basis for the contempt court's decision. *McIntyre*, 94 Or App at 243.

[14] ORS 131.515(1) provides, "No person shall be prosecuted twice for the same offense."

did state—we could *only* understand the court to have found that the contempt contact for which the defendant was prosecuted encompassed the entire June 9 incident (including the conduct that gave rise to the burglary charges), hence, the contempt and the burglary were part of the same criminal episode.

The state, on the other hand, contends that *Delker*, 123 Or App 129, compels the conclusion that the offenses were *not* part of the same criminal episode. In that case, the defendant's estranged wife had obtained a restraining order prohibiting the defendant from, in any manner, " 'molesting, interfering with or menacing' " the wife or their minor children. It also prohibited him from being at her apartment. On the night in question, the defendant and his estranged wife were out together celebrating her birthday. At approximately 2:15 a.m., they got into a fight back at her apartment, and the defendant allegedly assaulted his wife. The police were called, and the wife was taken to the hospital. Later, at about 3:45 a.m., the defendant allegedly returned to the apartment, unlawfully entered it, and started a fire. *Id.* at 131.

Based on that conduct, the defendant was charged with two counts each of first-degree burglary, first-degree arson, and first-degree criminal mischief, as well as one count of fourth-degree assault. While those charges were pending, he was found in criminal contempt for violating the restraining order. The defendant then moved to dismiss the criminal charges, contending, in part, that those crimes and the conduct that formed the basis of the criminal contempt were part of the "same criminal episode" for purposes of former jeopardy. *Id.* at 131.

The trial court granted the defendant's motion and dismissed the charges on former jeopardy grounds, "finding that all seven criminal charges were prosecuted in the criminal contempt proceeding." *Id.* at 132. On appeal, we examined the record of the contempt hearing and concluded that it did not support that finding—that is, it "d[id] not show that the conduct that the contempt court found violated the restraining order was the same conduct that constituted any of the criminal charges." *Id.* at 134. Rather, the record

showed that, at the contempt hearing, in response to questions from the court, the defendant admitted to being with his estranged wife and being at her apartment. That led to the court's finding: " *'Well, I will find that you did violate the restraining order by being on the premises described in the order and having contact with the petitioner.'* " *Id.* (emphasis in *Delker*).

We concluded that the record thus demonstrated that the conduct on which the contempt court based its finding of contempt was limited to the defendant "being at his estranged wife's apartment and having contact with her," and was *not*, as the trial court had found, the conduct constituting the seven criminal charges. *Id.*[15] In other words, in *Delker*, unlike in *McIntyre*, the record did not support a finding that the contempt court had based *its* finding of "contact" violating the restraining order on the entire course of events, including the conduct comprising the burglary, arson, criminal mischief, and assault charges.

A significant difference between *McIntyre* and *Delker* is that, in *Delker*, the conduct potentially constituting the "contact" that violated the restraining order spanned a time period of several hours, occurred in more than one location, and did not involve a continuous and uninterrupted course of conduct. Considering those factual circumstances and the context in which the ruling was made (described above), the court's narrow statement that the defendant violated the restraining order by "having contact with the petitioner" could not be understood to encompass the entirety of the defendant's conduct. That is in direct contrast to

---

[15] Citing *McIntyre*, we therefore held that prosecution of the defendant on the criminal charges would not violate ORS 131.515(1), because the defendant did not prove that the criminal prosecution "is for the same offense for which he was found in criminal contempt." *Delker*, 123 Or App at 134. We further concluded that prosecution was not barred by ORS 131.515(2), because the offenses were not part of the same criminal episode, reasoning that the offenses "occurred independently and were not part of a continuous and uninterrupted course of conduct and have wholly different elements." *Id.* at 136. To the extent that we implied in *Delker* that *McIntyre* informs only a former jeopardy challenge under subsection (1) of ORS 131.515, we disavow it. Although, to be sure, in *McIntyre*, 94 Or App at 243, we stated that the successive prosecutions in that case violated both subsections (1) and (2) of ORS 131.515, as noted, the issue before the court was whether the two charges litigated the "same criminal episode," a concept that implicates subsection (2).

*McIntyre*, where nothing in the record indicated that the "June 9" contact involved a similar span of time, location, and circumstances.

In our view, this case is more like *McIntyre* than *Delker*. Here, the trial court found that defendant's contempt conviction was based, in part, on the same conduct for which defendant was charged with assault. The record of the contempt hearing reveals that the contempt court found defendant guilty based on defendant's "contact [with S] at Monteith park and the contact [with S] at the residence." As in *McIntyre*, the contempt court did not parse its finding more specifically—that is, the court did not identify a particular act or any particular conduct of defendant at the residence that specifically constituted the *contact* violating the restraining order. And, unlike in *Delker*, it is not apparent from the context in which that ruling was made that the court's reference to the "contact" at the residence could be understood only narrowly—that is, that it could only be understood to refer to the initial verbal exchange between the defendant and S on the back porch and to exclude the alleged assaults.

In contrast to *Delker*, here, the entire episode at the residence took place in a very short span of time, at a single location, and involved a continuous and uninterrupted course of conduct on the part of defendant. Defendant suddenly appeared at the back of the house and started arguing with S, asking her accusatory questions about what she had been doing. When S turned to leave, he allegedly assaulted her by throwing her against a porch post. It is in the context of those factual circumstances that the contempt court's statement of the basis for its conviction must be understood. *See Delker*, 123 Or App at 134. Considered in that light, we conclude that the trial court's finding that the "contact" on which defendant's contempt conviction was based encompassed the entirety of defendant's conduct at the residence—including the alleged assault—is supported by the evidence in the record.

In sum, we conclude that the trial court's determination that defendant's violation of the restraining order and

the assault charges were "based upon the same criminal episode" was legally correct, and its findings are supported by evidence in the record. Accordingly, the trial court did not err in determining that prosecution of defendant on the assault charges is barred by ORS 131.515(2).

■     We turn to the state's alternative argument that, by not objecting when the state moved to bifurcate the trial and by "implicitly agree[ing] to separate trials by discussing trial dates for the remaining charges and by agreeing to the trial date on the contempt"—defendant waived any former-jeopardy challenge. That argument is easily disposed of. Even assuming without deciding that defendant could waive his former jeopardy challenge by essentially standing silent in the face of the state's request to try the contempt charge separately from the assault charges, at the time of the state's motion, defendant had no reason to object. First, at that point, jeopardy had not attached because defendant had not yet been prosecuted for any crime in the indictment. More significantly, there was no way for defendant to have known—nor was he required to anticipate—that the state would choose to present evidence of the assault during the bifurcated contempt trial. Defendant was indicted for one count of contempt for "having personal contact" with S, in violation of a court order. As discussed above, the state could have established that violation based on the contact that defendant had with the S at the park. There was no need for the state to recount the second incident at all, let alone put on evidence of the assault.

We also reject the state's suggestion that defense counsel's request for a continuance of trial, under circumstances where his client was understood to have been entitled to release from custody in the meantime, is somehow akin to a defendant electing to sever a charge from an indictment by pleading guilty to that charge. *See, e.g., State v. Schaffran*, 95 Or App 329, 333, 769 P2d 230 (1989) (holding that the defendant's guilty plea to criminally negligent homicide was an election to sever that count from the rest of the indictment and thus constituted a waiver of any former jeopardy claim).

Affirmed.