Argued and submitted September 27, 2022, vacated and remanded February 8, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NICO ARMONN THOMAS,
*Defendant-Appellant.*

Multnomah County Circuit Court
19CR63675; A175763

525 P3d 73

Defendant appeals from a judgment of conviction for unlawful use of a weapon (UUW), ORS 166.220, which followed an earlier prosecution for felon in possession of a firearm (FIP), ORS 166.270. Among other things, defendant assigns error to the trial court's denial of his motion to dismiss the UUW charge on former jeopardy grounds. *Held*: The Court of Appeals concluded that the trial court erred in concluding that defendant's two offenses were separate criminal episodes because defendant's conduct underlying the UUW offense and the FIP offense was continuous and uninterrupted and directed at a single criminal objective of threatening or harming the victim. Because the trial court did not reach the question whether the prosecutor possessed the requisite knowledge of the UUW offense at the time of commencement of the first prosecution of the FIP offense—an element that defendant must prove to succeed on his motion to dismiss—the court vacated the UUW conviction and remanded to the trial court for an evidentiary hearing on that question.

Vacated and remanded.

Andrew M. Lavin, Judge.

Neil F. Byl, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.*

_____
* Jacquot, J., *vice* James, J. pro tempore.

JOYCE, J.

Vacated and remanded.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for unlawful use of a weapon (UUW), ORS 166.220, which followed an earlier prosecution for felon in possession of a firearm (FIP), ORS 166.270. He raises four assignments of error. For the reasons that follow, we agree with defendant in his first assignment that the trial court erred in denying his motion to dismiss on former jeopardy grounds. But because the trial court did not reach the question whether the prosecutor possessed the requisite knowledge of the UUW offense at the time of commencement of the first prosecution of the FIP offense—an element that defendant must prove to succeed on his motion to dismiss—we vacate the UUW conviction and remand to the trial court for an evidentiary hearing on that question.[1]

Defendant assigns error to the trial court's denial of his motion to dismiss the UUW charge on the basis that the former jeopardy statute, ORS 131.515(2), required the state to bring the UUW charge together with the FIP charge. ORS 131.515(2) provides that "[n]o person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court."[2]

As particularly relevant to the question on appeal, a defendant seeking dismissal on former jeopardy grounds bears the burden of proving that each offense was part of the same criminal episode. *State v. Fore*, 185 Or App 712,

---

[1] Defendant's remaining assignments of error assert challenges to the court's denial of his motions to exclude scientific fingerprint evidence and certain gang evidence, as well as a challenge to his sentence as unconstitutional. We decline to address those assignments of error, because they would no longer be at issue should the trial court grant defendant's motion to dismiss. That said, our decision should not be understood as precluding defendant from raising them on appeal again should the court reimpose defendant's conviction. *See State v. Sierra*, 278 Or App 96, 102, 374 P3d 952 (2016), *aff'd*, 361 Or 723, 399 P3d 987 (2017) (explaining that, where an appellate court expressly declines to address an issue on appeal, there is no prior ruling of the appellate court that can be treated as law of the case on that issue).

[2] It is undisputed that venue was appropriate for both offenses in the same court.

715, 62 P3d 400 (2003). Whether defendant proved that the UUW charge arose from the "same criminal episode" as the FIP offense "is a question of law that, in turn, may depend on predicate findings of historical fact." *State v. Potter*, 236 Or App 74, 82, 234 P3d 1073 (2010). We consider whether there is evidence in the record sufficient to support the trial court's factual findings and review the court's application of the law to those facts for legal error. *State v. Witherspoon*, 250 Or App 316, 323, 280 P3d 1004 (2012); *Fore*, 185 Or App at 716. We conclude that defendant carried his burden to show that the conduct underlying the UUW offense was part of the same criminal episode as that of the FIP offense.

The facts related to those offenses are relatively few and were stipulated to by the parties below. Police suspected defendant of shooting a firearm at a person whom police identified as a gang member. Witnesses at the shooting described that defendant and another individual fled in a dark-colored Ford Windstar van with the passenger side rear window missing.

After police processed the shooting scene (approximately two hours after the shooting was reported), Deputy Stephens, a gang enforcement investigator, drove to a residence that he knew to be associated with the victim. The home was one or two miles from where the shooting occurred. Stephens went to that residence because he suspected that the shooting incident was gang-related, and it "may be part one and part two could be imminent and we would like to prevent part two." Within five minutes of his arrival, Stephens saw a van matching the same description as the van involved in the shooting driving by him "at a very slow rate." Stephens attempted to stop the van, but it sped off, and a high-speed chase ensued. During the pursuit, he saw defendant throw something out of the window. The object that defendant threw turned out to be a handgun of the same caliber as the gun that was used in the shooting.

Defendant was charged with, and convicted of, FIP based on the incident of him throwing the gun out of the window during the police pursuit. Later, further investigation linked defendant to the earlier shooting: Some bullet casings from the scene of the shooting were initially sent

to the lab and did not match the gun that defendant threw from the van. After receiving further firearms training, Stephens sent additional casings to the lab for testing, and they match the gun that defendant had thrown from the van. That investigation then led to the charge at issue here, UUW, approximately five months after defendant was convicted of FIP.

The question we must resolve is whether the UUW offense was part of the same criminal episode as the FIP offense; if so, former jeopardy may preclude the state from separately prosecuting defendant for UUW. ORS 131.515(2) ("No person shall be separately prosecuted for two or more offenses based upon the same criminal episode ***."). A "[c]riminal episode" is "continuous and uninterrupted conduct that *** is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective." ORS 131.505(4). Factors bearing on that determination include "(1) whether the conduct comprising the offenses is continuous and uninterrupted, (2) the extent to which it is temporally and spatially linked, and (3) whether it is designed to serve a single criminal objective." *State v. Wilder*, 305 Or App 618, 627, 471 P3d 798 (2020), *rev den*, 367 Or 535 (2021).[3]

With respect to whether conduct is designed to serve a "single criminal objective," a criminal objective "refers to the pursuit of some object or attainment of some goal beyond the successful commission of the acts constituting the offense charged[.]" *State v. Cloutier*, 286 Or 579, 599 n 21, 596 P2d 1278 (1979). The criminal objective should not be construed too narrowly, such as by distinguishing between various motivations behind a particular course of conduct. *Witherspoon*, 250 Or App at 325. Whether a defendant's conduct is directed to the accomplishment of a single criminal objective is "'an objective determination,'" depending on "'what reasonably appeared under the circumstances to be within a single criminal objective.'" *State v. Tooley*, 265

---

[3] Two crimes may also be part of the same criminal episode if they are "cross-related." *Wilder*, 305 Or App at 623. Because we conclude that defendant carried his burden of showing that the offenses were directed to the accomplishment of the same criminal objective, we do not further address the question whether the crimes were cross-related.

Or App 30, 39, 333 P3d 348, *rev den*, 356 Or 575 (2014) (quoting Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report § 26, 17 (Nov 1972)).

Under the particular circumstances of this case, we conclude that defendant carried his burden of proving that the separate crimes of shooting at the victim (UUW) and continued possession of the same firearm (FIP) were directed at a single criminal objective. Defendant's conduct was directed at one specific target—the victim of the shooting—with a single criminal objective of threatening and harming that person. *See e.g.*, *Witherspoon*, 250 Or App at 324-25 (the defendant's multiple acts of domestic abuse that took place in various rooms in the victim's residence shared a single criminal objective of harassing and injuring the victim over the course of the night); *State v. Kautz*, 179 Or App 458, 467, 39 P3d 937, *rev den*, 334 Or 327 (2002) (the defendant's burglary and robbery offenses were directed to a single criminal objective of stealing property; although the robbery occurred after the burglary, the defendant's earlier objective to steal the victim's property continued throughout the course of events). Indeed, the handgun that resulted in defendant's FIP conviction was the same firearm that formed the foundation for the state's subsequent prosecution for defendant's unlawful use of that firearm in the shooting.

To be sure, as the state notes, defendant's two offenses were separated in time by approximately two hours and separated in location by at least one mile. But whether there is a single criminal objective does not depend on "whether there is any difference in time and space at all, but whether there is enough of a difference in time, place, and circumstances surrounding the different acts to show that defendant's conduct was directed toward separate criminal objectives." *State v. Burns*, 259 Or App 410, 430, 314 P3d 288 (2013), *recons den and appeal dismissed*, 261 Or App 113, 323 P3d 275 (2014); *see also State v. Taylor*, 293 Or App 460, 468, 428 P3d 939 (2018) (concluding that the defendant's multiple crimes of coercion and felony assault occurred over the course of one night in or near a single apartment as part of an ongoing domestic violence supported a single criminal objective). We agree with defendant that the separation in

time and place here does not indicate that defendant's conduct was directed toward different criminal objectives; to the contrary, defendant's conduct over time and in the different locations precisely demonstrates that he had a single criminal objective—to harm the victim.

Whether defendant's conduct in carrying out his criminal objective was "continuous and uninterrupted" presents a somewhat closer question, given that there was a gap in time of about two hours and a gap in distance of one to two miles between the two offenses. That said, "[a] mere gap in time is not sufficient to establish noncontinuous or interrupted conduct." *State v. Thornsberry*, 315 Or App 287, 296, 501 P3d 1 (2021) (internal quotation marks omitted); *see also Tooley*, 265 Or App at 43-44 (in the context of a motion for judgment of acquittal, a rational factfinder could conclude that the defendant's two murders, separated by 12 hours, were part of a continuous and uninterrupted course of conduct that constituted a single criminal episode). That is because "conduct," as used in ORS 131.505(4), means "the entire course of conduct" in which the defendant engaged to accomplish their criminal objective, even if there is a time gap in between the defendant's separate crimes. *Tooley*, 265 Or App at 43.

Here, defendant's entire course of conduct—beginning with his failed attempt to injure the victim at the shooting (as charged in the UUW offense) and ending when he discarded the same firearm used at the shooting after he showed up in the same van moving "at a very slow rate" near the residence associated with the victim (as charged in the FIP offense)—was continuous and uninterrupted. As discussed above, in a relatively short period of time after defendant failed to harm the victim at the shooting, police saw the van at the address known to be associated to the victim.[4] Defendant's appearance in the victim's neighborhood no more than two hours after the shooting provides a temporal and spatial link showing that he continued to carry his criminal objective to threaten the victim throughout his

---

[4] In fact, the state's theory at trial on the UUW charge was that defendant went to that address to continue looking for the victim, with the continuous and uninterrupted possession of the same firearm in the car and with the same intent to shoot him.

course of conduct. Conversely, there is no evidence in the record indicating that defendant desisted in his criminal objective of threatening the victim. *See Witherspoon*, 250 Or App at 318-24 (where the defendant committed multiple crimes constituting domestic violence over the course of more than five hours and there was a break in time between the events when the defendant and the victim were in separate parts of the house, the defendant's multiple acts of domestic abuse were nevertheless "continuous and uninterrupted"); *see also Burns*, 259 Or App at 422 (as an example provided by the drafters of ORS 131.505(4), one criminal episode of theft and robbery exists when "the defendant steals a car at 9:00 p.m., robs a market at 9:30 p.m., and then flees in the stolen car" (citing Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report § 26, 17-18 (Nov 1972))).

Because defendant's conduct underlying the UUW offense and FIP offense was continuous and uninterrupted and directed at a single criminal objective of threatening or harming the victim, we conclude that the trial court erred in concluding that two offenses were separate criminal episodes based on that ground. Defendant suggests—and the state agrees—that the proper remedy is to remand to the trial court to address the additional question whether the UUW offense was "reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution" of the FIP offense. ORS 131.515(2). We agree with the parties' proposed remedy and thus vacate the conviction and remand to the trial court for an evidentiary hearing on that question.

Vacated and remanded.