Argued and submitted February 27, affirmed October 15, 1997

# STATE OF OREGON,
*Respondent,*

*v.*

# TRACY RENAE WISE,
*Appellant.*

# (94CR-3006FE; CA A91662)

946 P2d 363

Louis R. Miles, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau, Judge, and Richardson, Senior Judge.

RIGGS, P. J.

**RIGGS, P. J.**

Defendant appeals from a judgment of conviction on two counts of first-degree theft, arguing that the trial court erred in denying her motion for a judgment of acquittal, in failing to merge the two convictions and in ordering restitution in an amount that defendant characterizes as the property's replacement value. We affirm the trial court.

The following events gave rise to defendant's convictions: Defendant and Gibbons went to see the victim, Bruder, but he was not at home when they arrived. Bruder's roommate, Hunter, let defendant and Gibbons into the home, and they went upstairs where they remained for about 20 minutes. Defendant subsequently came downstairs and told Hunter that she was taking Bruder's guns to satisfy a debt. Gibbons came downstairs with the two guns over his shoulder, and he and defendant left, taking the guns with them.

Bruder reported the theft of the two guns, a .50-caliber muzzle loader and a 1942 German Mauser 8 mm hunting rifle, when he returned from a business trip. Defendant was indicted on two counts of theft in the first degree, and a jury subsequently found her guilty on both counts.

■  Defendant first assigns error to the trial court's failure to grant her motion for a judgment of acquittal. Defendant argues that there was insufficient evidence to support the convictions because the state failed to establish that each of the two guns was a "firearm" as defined in ORS 164.055(2)(c). ORS 164.055 provides, in relevant part:

"(1)  A person commits the crime of theft in the first degree if, by other than extortion, the person commits theft as defined in ORS 164.015 and:

"* * * * *

"(d)  The subject of the theft is a firearm or explosive;

"* * * * *

"(2)  As used in this section:

"* * * * *

"(c) 'Firearm' means a weapon, by whatever name known, which is designed to expel a projectile by the action of black powder or smokeless powder and which is readily capable of use as a weapon."

■■ Defendant argued below and on appeal that there was insufficient evidence that either gun was "readily capable of use as a weapon." To determine whether there is evidence sufficient to support a conviction, we "must determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). The state is not required to test fire a gun to prove that it is "readily capable of use as a weapon." *State v. Turechek*, 74 Or App 228, 233, 702 P2d 1131 (1985) (construing same phrase in ORS 166.210); *see also State v. Bennett*, 79 Or App 267, 271-72, 719 P2d 38, *rev den* 301 Or 667 (1986) (also construing ORS 166.210, finding evidence sufficient to support conviction when "[t]here was no evidence of firing the weapon").

Bruder testified that he had modified the muzzle loader for use as a hunting rifle:

"The muzzle loader was a left-hand breach, meaning the hammer was on the left-hand side of the stock, made of oak, black barreled. It had a piece of odd-six casing that I had cut down and * * * attached to the trigger guard with a piece of steel cable so that I can hunt in the field with a firing cap on the nipple itself without the nipple getting wet."

Bruder also described the German Mauser as a "hunting rifle" and testified that it had a "three-by-nine scope on it." He further testified that he had taken defendant out shooting approximately six months before the theft. We conclude that there was sufficient evidence from which a reasonable trier of fact could find beyond a reasonable doubt that each gun was readily capable of use as a weapon. *See State v. Gortmaker*, 60 Or App 723, 742, 655 P2d 575 (1982), *aff'd* 295 Or 505, 668 P2d 354 (1983), *cert den* 465 US 1066 (1984) (gun that could be made operable in four minutes at a cost of six dollars was readily capable of use as weapon); *Bennett*, 79 Or App at 271-72 (evidence that gun was offered for sale by gun shop sufficiently supported that it was "readily capable of use as

weapon"). The trial court did not err in denying defendant's motion for judgment of acquittal.

■■ Defendant contends that the trial court erred in failing to merge the two counts of theft in the first degree. As we have previously noted, a person commits the crime of theft in the first degree if the person commits the crime of theft as defined in ORS 164.015 and "[t]he subject of the theft is *a* firearm or explosive." ORS 164.055(1)(d) (emphasis supplied). ORS 164.015 provides, in turn, that a person commits theft when,

"with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"(1) Takes, appropriates, obtains or withholds such property from the owner thereof[.]"

The taking of *a single* firearm with the intent to deprive the owner of it accordingly satisfies the statutory components of the crime. The taking of two firearms is, then, two violations of ORS 164.055(1)(d), despite the fact that the violations occurred in the course of a single incident and were committed against a single victim. Whether the violations should *merge* for purposes of conviction is a separate question. Defendant takes the position that the two counts of theft must merge pursuant to ORS 161.062(3), which specifically applies to theft and criminal mischief:

"When the same conduct or criminal episode violates ORS 164.015 to 164.140 or 164.345 to 164.365 and *the violation* consists of a single act or a continuous and uninterrupted course of conduct, *the offense* shall result in a single conviction, regardless of whether the property which is the subject of *the offense* is owned by one or more than one person." (Emphasis supplied.)

Defendant argues that her theft of the two guns, in violation of ORS 161.055, must be merged into a single conviction, because the taking of the two guns consisted of a single act or a continuous and uninterrupted course of conduct.[1] In the state's view, because defendant's single act resulted in multiple violations of ORS 164.055, there can be no merger under

---

[1] Defendant does not argue that merger is required under any other provision.

ORS 161.062(3), which, the state argues, relates to conduct resulting in a *single* violation involving multiple victims.

We agree with the state's analysis, which is borne out by the language of the statutes and their context. ORS 161.062(2) provides, in part:

> "Except as provided in subsection (3) of this section, when the same conduct or criminal episode violates only one statutory provision, but involves two or more victims, there are as many separately punishable offenses as there are victims."

That subsection refers to ORS 161.062(3) as an "exception" to the general rule stated in subsection (2) that, when the same conduct violates only one statutory provision *and involves multiple victims,* there are as many separately punishable offenses as there are victims. Subsection (3), in turn, refers to "the violation" and "the offense" consisting of a single act. The subsection speaks of the unlawful conduct in the singular and makes no reference to conduct resulting in multiple violations of the same statute. In contrast, ORS 161.062(4) and ORS 161.067(3)[2] each make express reference to "repeated violations of the same statutory provision against the same victim." As we have concluded, the taking of two firearms is two thefts—two violations of the same statute. There is no provision for merger under ORS 161.062(3) in that context.[3]

---

[2] ORS 161.062(4) and ORS 161.067(3) are identical and provide:

"When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves *repeated violations of the same statutory provision* against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent. Each method of engaging in deviate sexual intercourse as defined in ORS 163.305, and each method of engaging in unlawful sexual penetration as defined in ORS 163.408 and 163.411 shall constitute separate violations of their respective statutory provisions for purposes of determining the number of statutory violations." (Emphasis supplied.)

[3] In the light of our holding, we do not address the state's contention that ORS 161.062(3) is implicitly repealed by ORS 161.067. *Compare State v. Cheney,* 92 Or App 633, 636-37, 759 P2d 1119 (1988) (holding that ORS 161.062(1) is implicitly repealed by ORS 161.067(1)).

■ Defendant's final assignment of error relates to the amount of restitution ordered by the trial court. At the hearing on the amount of restitution, the state offered evidence that Bruder paid $750 for the guns. The state also offered evidence that it would cost Bruder $1,090 to purchase a Mauser and a muzzle loader from a catalog. That is the extent of the evidence on the value of the guns. Defendant argued to the trial court that it should award restitution in the amount of $750, because $1,090 represented the guns' "replacement" value and the applicable statutes do not authorize an award of restitution for replacement value. The state responded that an award of $1,090 was within the trial court's discretion. The trial court awarded $1,090.

■ We review an award of restitution to determine whether it was imposed consistently with statutory requirements. *State v. Lewis*, 123 Or App 476, 478, 860 P2d 306 (1993). ORS 137.103(3) defines restitution as "full, partial or nominal payment of pecuniary damages to a victim." ORS 137.103(2), in turn, defines "pecuniary damages" as

> "all special damages, but not general damages, which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities and shall include, but not be limited to, the money equivalent of property taken, destroyed, broken or otherwise harmed, and losses such as medical expenses and costs of psychological treatment or counseling."

■ In this case, conversion is the civil action that would impose liability on defendant. The measure of damages for conversion of personal property is the reasonable market value at the time it was taken. *Hall v. Work*, 223 Or 347, 357, 354 P2d 837 (1960); *Lanz v. Douglas Tool & Engineering, Inc.*, 138 Or App 89, 92, 907 P2d 1128 (1995). That is the standard the trial court enunciated. In awarding $1,090, the trial court reasoned that, based on the evidence, it appeared that the firearms had appreciated in value since Bruder purchased them. As such, it appears that the trial court considered $1,090 to be a suitable estimate of the guns' market value at the time of conversion. On the record before us, we cannot say that the order of restitution in the amount of

$1,090 was imposed inconsistently with statutory requirements and, therefore, we affirm the order.

Affirmed.