Argued and submitted December 30, 2008, remanded for resentencing; otherwise affirmed April 22, 2009

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# JAMES ANDREW SUMPTER, III,
*Defendant-Appellant.*

Josephine County Circuit Court
06CR0158; A134017

206 P3d 1088

Brandon G. Williams, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Pamela Johnstone Walsh, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Deits, Judge pro tempore.

BREWER, C. J.

**BREWER, C. J.**

Defendant was convicted of first-degree assault, ORS 163.185, unauthorized use of a vehicle, ORS 164.135, and first-degree theft, ORS 164.055. On appeal, he argues that the court erred in denying his motion for judgment of acquittal on the first-degree theft charge on the ground that the state presented insufficient evidence that the gun involved in the crime was an operable firearm. Defendant also argues that the trial court erred in sentencing him as a repeat property offender, pursuant to ORS 137.717, because the state failed to establish that he had committed the requisite predicate property offense. As explained below, we reject defendant's first argument but agree with his second. Accordingly, we affirm defendant's convictions but remand for resentencing.

Because the jury found defendant guilty, we state the facts pertinent to defendant's arguments on appeal in the light most favorable to the state. *State v. Gibson*, 338 Or 560, 562, 113 P3d 423, *cert den*, 546 US 1044 (2005). Defendant went with several other individuals to the residence of Miller, the victim, who had not previously met defendant. Defendant offered to sell Miller a car, and Miller went with defendant to defendant's trailer. Miller intended to sell methamphetamine to defendant, gave defendant some methamphetamine, then left the trailer at defendant's request to check to see if any police officers were nearby. Before returning to the trailer, Miller moved a handgun that he carried in his date book into his waistband because he was afraid that defendant might steal his drugs. Miller had bought the handgun, which he identified at trial as "a .25 automatic," the day before and had put ammunition into it. After Miller returned to the trailer, defendant struck him on the head with a metal object and fractured his skull. Defendant told Miller to give him the gun or defendant would hit him again. Miller gave defendant the gun. Defendant demanded that Miller give him his money, and Miller complied. Defendant then dropped Miller off at a restaurant, after which Miller was taken to the hospital for treatment of his injury.

Defendant was charged with first-degree theft under ORS 164.055, as follows: "The defendant, on or about February 4,

2006, in Josephine County, Oregon, did unlawfully and intentionally commit theft of a handgun, a firearm, the property of another."[1] At the close of the evidence at trial, defendant moved for a judgment of acquittal on the theft charge, arguing that the state had failed to prove that the gun was a "firearm" for purposes of ORS 164.055. The trial court denied defendant's motion, and defendant was convicted of the theft offense, as well as the remaining offenses.

■        On appeal, defendant argues that the trial court erred in denying his motion for judgment of acquittal on the theft charge. In particular, he argues that the state failed to prove that the theft was of a "firearm" as that term is defined in ORS 166.210(3): " 'Firearm' means a weapon, by whatever name known, which is designed to expel a projectile by the action of powder and which is readily capable of use as a weapon." Defendant argues that this case is comparable to *State v. Boone*, 213 Or App 242, 160 P3d 994, *modified on recons*, 215 Or App 428, 169 P3d 1274 (2007), in which we reversed convictions for theft of firearms. In that case, we reasoned that

> "[t]he state adduced no evidence about the guns, beyond the facts that they were stolen and kept in the gun safe that was taken from the storage unit. There was no evidence of how many guns were taken, what types of guns they were, and whether they were operable or readily capable of use as a weapon."

*Id.* at 250. Defendant suggests that, because no testimony was presented that the gun had been test-fired or examined to determine its operability, the state failed to prove that it was operable or readily capable of use as a weapon.

---

[1] ORS 164.055 provides, in part:

"(1)  A person commits the crime of theft in the first degree if, by other than extortion, the person commits theft as defined in ORS 164.015 and:

"* * * * *

"(d)  The subject of the theft is a firearm or explosive[.]"

ORS 164.015, in turn, provides, in part:

"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"(1)  Takes, appropriates, obtains or withholds such property from an owner thereof[.]"

The state responds that it was not required to adduce evidence that the gun had been test-fired. Rather, the state asserts, it could present circumstantial evidence that the gun was operable or readily capable of use as a weapon. The state relies on cases such as *State v. Perry*, 165 Or App 342, 996 P2d 995 (2000), *aff'd*, 336 Or 49, 77 P3d 313 (2003), and *State v. Wise*, 150 Or App 449, 946 P2d 363 (1997), and argues that such circumstantial evidence was sufficient in the present case to withstand a motion for judgment of acquittal. We agree.

In *Perry*, the defendant was carrying a concealed 9 mm handgun while at work in a store. The owner of the store had another gun near the cash register, but that gun was not operable. 165 Or App at 344. Although an officer testified that he performed a "function check" on the gun when he seized it, he did not explain what a "function check" entailed. He did not test-fire it, and the gun itself was not introduced into evidence at trial. On appeal, we rejected the defendant's argument that there was insufficient evidence that the gun was operable or readily capable of use as a weapon to create a question for the trier of fact. We explained:

> "Here, defendant was cited for unlawful possession of a firearm after the function check was performed. He knew that the gun provided by owner did not work and was surprised to learn that a license is needed to carry a concealed handgun at work. Finally, *the circumstances of defendant's employment and [the] manner in which he carried the gun are consistent with an intent to protect himself and owner's property*. These facts, taken together, permit a trier of fact to find beyond a reasonable doubt that the officer found the handgun in working condition."

*Id.* at 345 (emphasis added). In *Wise*, the defendant was charged with theft of two weapons, identified by the victim as a .50-caliber muzzle loader and a 1942 German Mauser 8 mm hunting rifle. 150 Or App at 451. The victim testified in detail about how he had modified the muzzle loader for use as a hunting rifle and also described the Mauser as a hunting rifle with a scope on it. He further indicated that "he had taken defendant out shooting approximately six months before the

theft." *Id.* at 452. We concluded that that evidence was sufficient to create a jury question as to whether the guns were operable or readily capable of use as weapons. *Id.* at 452-53.

In this case, there was evidence that Miller had purchased the gun with the intent of using it for personal protection. *See State v. Bennett*, 79 Or App 267, 719 P2d 38, *rev den*, 301 Or 667 (1986) (evidence that the defendant had purchased gun and ammunition from gun shop was sufficient circumstantial evidence that the gun met the definition of firearm). Moreover, Miller's testimony indicated that he was familiar with firearms. He loaded the gun and carried it on his hip, because he feared being robbed. Miller also identified what type of weapon it was and what type of ammunition it used. Moreover, the gun itself was admitted into evidence, and defendant does not suggest that anything about the gun, or the testimony about the gun, called into question its operability.[2] In these circumstances, we conclude that there was sufficient evidence that the gun met the definition of "firearm" to defeat a motion for judgment of acquittal.

■ Defendant also argues that the court erred in sentencing him as a repeat property offender pursuant to ORS 137.717. In particular, the court imposed 13-month prison terms on defendant's convictions for unauthorized use of a motor vehicle and first-degree theft, based on the prosecutor's representation that defendant had a prior conviction for "Robbery with a Weapon in Nevada in 2001." Defendant argued that the state had not demonstrated that the Nevada conviction was for an offense that was comparable to those specified in ORS 137.717. The prosecutor responded that it was apparent from the title of the Nevada statute—Robbery with a Weapon—that the offense was comparable. Defense counsel responded that defendant had advised him that "it

---

[2] In that respect, this case is quite different from *State v. Briney*, 345 Or 505, 200 P3d 550 (2008). In *Briney*, the question presented was whether a gun, which undisputedly had a broken firing pin at the time the defendant possessed it, was nonetheless "readily capable of use as a weapon." The state argued that the gun was "readily" capable of use as a weapon because, even though a replacement firing pin could not be purchased locally, it would have been possible for the defendant to order one over the Internet and have it shipped by overnight shipping. *Id.* at 508. The court rejected the state's argument, concluding that "the legislature intended that the firearm either be operational or promptly able to be made so" at the time of the offense. *Id.* at 516.

was a robbery" but that "[t]here was not an enhancement held in—with a weapon."

On appeal, defendant asserts, and the state agrees, that the state failed to prove that the Nevada conviction was a "comparable offense" for purposes of ORS 137.717(4)(b).[3] ORS 137.717(6) requires that the previous conviction "must be proven pursuant to ORS 137.079." ORS 137.079, in turn, concerns how the state is to prepare a presentence report and how a defendant may object to its contents. The state concedes that no evidence was adduced in the present case to satisfy its obligations under ORS 137.717 and ORS 137.079 to establish defendant's criminal history. On review of the record, we conclude that the state's concession is well taken, and we accept it. The trial court erred in imposing repeat property offender sentences pursuant to ORS 137.717 on defendant's convictions for unauthorized use of a vehicle and first-degree theft.

Remanded for resentencing; otherwise affirmed.

---

[3] ORS 137.717 requires mandatory minimum sentences for certain property offenses if the offender had previous convictions for specific property offenses. ORS 137.717(4)(b) defines previous convictions as including comparable offenses from other states or from federal court.