Argued and submitted May 29, 2014, affirmed February 11, petition for review allowed July 9, 2015 (357 Or 551)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RASOOL ISLAM ISLAM,
*Defendant-Appellant.*

Multnomah County Circuit Court
130331128; A154949

344 P3d 22

Lindsey Burrows, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Lagesen, Judge.*

HASELTON, C. J.

_____

* Haselton, C. J., *vice* Wollheim, S. J.

## HASELTON, C. J.

Defendant pleaded no contest to theft in the second degree, ORS 164.045, for stealing jeans from a retail store. On appeal, defendant contends that the trial court erred by awarding restitution based on the retail value of the stolen jeans, rather than their wholesale value. For the reasons that follow, we disagree and, accordingly, affirm.

The circumstances material to our review are undisputed. In January 2013, defendant shoplifted 15 pairs of jeans from a Macy's department store in Multnomah County. Defendant pleaded no contest to second-degree theft and stipulated to pay restitution. At the outset of the restitution hearing, both parties agreed that, according to *State v. Onishchenko*, 249 Or App 470, 476, 278 P3d 63, *rev den*, 352 Or 378 (2012) (which we discuss below), the court was required to use the "fair market value" of the stolen jeans as the measure of restitution. However, the parties disagreed on whether the proper referent "market" was the retail market or the wholesale market.

According to defendant, who acknowledged that Macy's operated in both the wholesale and retail markets, the proper measure of "fair market value" was the wholesale value of the stolen property, because that is what it would cost Macy's to replace the jeans.[1] In that regard, defendant asserted that such an award in this case would comport with the remedial purpose of restitution, whereas awarding the retail value, in the absence of proof of lost sales, would confer a windfall:

> "Although fifteen pairs of jeans were missing, Macy's still had stock, they still had merchandise available for sale. * * * [T]heir loss was the replacement value of those items. And if Macy's goes to replace jeans, they may do it at a lower rate than—I mean, obviously, they mark it up to resell it. I mean, that's how stores work. They get a profit.

> "* * * [Defendant] should not be on the hook for the profit that Macy's would have gotten from those jeans, because they did not suffer an opportunity loss. In other words, the

---

[1] Defendant acknowledged that the retail value of the jeans was $68 per pair, for a total of $1,020, and he presented evidence that the wholesale value of the jeans was $35.98 per pair, for a total of $539.70.

flash mob did not steal all the jeans and prevent them from making any sales that day. So all Macy's is out is what it cost them to replace those fifteen pairs of jeans. * * *

"* * * * *

"* * * Clearly [awarding the retail value is] not fair. You need to make the victim whole. In this case, what makes the victim whole is the wholesale price of the items stolen.

"* * * * *

"* * * [T]his is not a punitive damages situation. And if the Court awards—I submit that if the Court awards Macy's the retail value that they would have charged for the jeans at the till, that profit that they would have gotten at that sale if that comes at [defendant's] expense, that is a windfall to Macy's, that that's in the nature of punitive damages."

The state acknowledged that it had no "information to say that [Macy's] did not have more inventory to put on their shelves" after defendant's theft, and it could not "speculate * * * if [Macy's] would have sold [the jeans]" if defendant had not stolen them. Nevertheless, invoking *Onishchenko*, 249 Or App at 476, the state remonstrated that the proper measure of the fair market value "is the price at which [the jeans] probably would have been sold in the regular course of business at the time and place where they were stolen."

The trial court agreed with the state that the referent market was the retail market:

"In a criminal theft case, the relevant market value is the value in the market in which the goods were being traded, namely the price at which they probably would have been sold in the regular course of business at the time when and place they were stolen. They would have sold for $68 a pair.

"* * * * *

"* * * Well, it will be interesting to see what the Court of Appeals does. I'm going to impose the retail price, because I think that's what *Onishchenko* says."

Consequently, the court awarded restitution corresponding to the retail value of the stolen jeans—$1,020.

On appeal, defendant renews his contention that the court erred by imposing the retail value of the stolen property as restitution. Defendant acknowledges that his

contention is similar to that which we rejected in *State v. Labar*, 259 Or App 334, 314 P3d 328 (2013)—which was decided after the trial court awarded restitution in this case—but he argues that *Labar* is either distinguishable or wrongly decided. As explained below, we disagree.

We begin by reviewing the relevant statutes. ORS 137.106 provides, in part:

"(1)(a)   When a person is convicted of a crime * * * that has resulted in economic damages, the district attorney shall investigate and present to the court * * * evidence of the nature and amount of the damages. * * * If the court finds from the evidence presented that a victim suffered economic damages * * * the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages * * *."

Under that statute, the state has the burden of producing "evidence of the nature and amount of the damages[,]" and proving those damages by a preponderance of the evidence. *State v. Yocum*, 247 Or App 507, 512, 269 P3d 113 (2011), *rev den*, 352 Or 25 (2012).

The term "economic damages," as used in ORS 137.106, is defined by ORS 137.103(2) as *"objectively verifiable monetary losses* including but not limited to * * * reasonable and necessarily incurred costs due to loss of use of property."* ORS 31.710(2)(a) (emphasis added). The term "objectively verifiable monetary losses" means "losses that are 'capable of verification through objective facts.'" *Yocum*, 247 Or App at 512 (quoting *DeVaux v. Presby*, 136 Or App 456, 463, 902 P2d 593 (1995)).

In *State v. Ramos*, 267 Or App 164, 340 P3d 703 (2014), we clarified that, for purposes of restitution in criminal actions, "economic damages" are no longer *limited* to those that a victim could recover against the defendant in a civil action.[2] We explained that,

"[i]n 2005, the Legislative Assembly amended ORS 137.103 and ORS 137.106 *to expand the scope of restitution.* Under

_____

[2] In so explaining, we disavowed the suggestion in several cases, including in *Labar*, that "the 'recoverable in a civil action' requirement still applies to restitution." *Ramos*, 267 Or App at 176 n 7.

the former version of the statutes, a victim was entitled to restitution if the victim had suffered 'pecuniary damages' as a result of a defendant's criminal activities. ORS 137.106 (2003), *amended by* Or Laws 2005, ch 564, § 2. 'Pecuniary damages,' in turn, was defined as 'all special damages, but not general damages, which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities [listing examples.]' ORS 137.103 (2003), *amended by* Or Laws 2005, ch 564, § 1. After the amendments, a victim is entitled to restitution of 'economic damages,' which term—as noted above—has the broad meaning set out in ORS 31.170(2)(a): 'objectively verifiable monetary losses [listing examples].' *See also* Tape Recording, House Committee on Judiciary, HB 2230, Jan 24, 2005, Tape 137, Side A (statement of Fred Boss, Chief Counsel of the Oregon Department of Justice's Civil Enforcement Division; introducing the bill on behalf of its sponsor, the Attorney General's Restitution Reform Task Force, and explaining that the bill was intended to replace the term 'pecuniary damages'—and specifically including the requirement that the damages would have been recoverable in a civil action—with the concept of 'economic damages')."

*Id.* at 175-76 (brackets in *Ramos*; emphasis added). Thus, as we noted in *Ramos*, the amendments to ORS 137.103 and ORS 137.106 were intended to *expand* recovery beyond that which was previously available by eliminating the "recoverable in a civil action" *limitation* on restitution.

The practical, and legal, upshot is that, in "Venn" diagram terms, any recovery permitted under our precedents applying the "recoverable in a civil action" formulation is necessarily a subset within the broader "economic damages" universe. Among those precedents—which we cited favorably in *Onishchenko*, the case on which the trial court here relied—is *State v Wise*, 150 Or App 449, 946 P2d 363 (1997).

In *Wise*, we determined that the appropriate measure of restitution in a theft case was the damages that the victim could recover against the defendant in a civil action for conversion. 150 Or App at 455. There, the trial court had ordered the defendant, who was convicted of two counts of first-degree theft, to pay the appreciated value of the stolen firearms, $1,090. *Id.* On appeal, the defendant argued that the court erred in awarding that amount because there was

evidence that the victim had purchased the guns for only $750. *Id.* We rejected that contention, holding that (1) "conversion is the civil action that would impose liability on [the] defendant" and (2) "[t]he measure of damages for conversion of personal property is *the reasonable market value at the time it was taken.*" *Id.* (emphasis added). We concluded, consistently with that standard, that $1,090 appeared to be a "suitable estimate of the guns' market value at the time of conversion." *Id.*

In *Onishchenko,* on which the trial court here relied, we invoked *Wise* in affirming the imposition of a compensatory fine under ORS 137.101(1) (not restitution). There, the defendant was convicted of aggravated first-degree theft, ORS 164.057, for stealing a large number of new shoes from the victim, whose retail shoe store had recently gone out of business. 249 Or App at 471. At the hearing pertaining to a compensatory fine, the state presented evidence of the purchase price that the victim had paid for each pair of shoes in addition to the retail price that the victim was going to charge for the shoes before his store went out of business. *Id.* at 472. The defendant argued that the court should not use the purchase price of the shoes, because the victim had testified that shoes lose value over time, and there was evidence that the victim would not be able to sell them for the same amount that he purchased them for. *Id.* The state responded that the best indicator of the value of the shoes was what the victim had paid for them—and, thus, to make the victim whole again, the court should award the purchase price. *Id.* The trial court agreed with the state and imposed a compensatory fine for the amount that the victim had paid for the shoes, because that "reflected the value of the shoes at the time they were stolen." *Id.* at 473.

On appeal, we first noted that a requisite for imposition of a compensatory fine is that the criminal conduct results in an injury for which the victim "has a remedy by civil action," ORS 137.101(1), and then stated that the victim "would have a civil action for conversion against [the] defendant." *Id.* at 475-76. We continued:

"'The measure of damages for conversion of personal property is the reasonable market value [of the property] at the time it was taken.' *State v. Wise,* 150 Or App 449, 455, 946

P2d 363 (1997); *see also State v. Callaghan,* 33 Or App 49, 58, 576 P2d 14, *rev den,* 284 Or 1 (1978) (in a criminal theft case, the relevant 'market value' is 'the value in the market in which the goods were being traded, namely, the price at which they probably would have been sold in the regular course of business at the time when and place where they were stolen')."[3]

*Id.* at 477. We concluded that there was sufficient evidence for the trial court to determine that the victim had suffered loss in the amount of the purchase price of the shoes. *Id.* at 479.[4]

In sum, *Onishchenko* (albeit addressing the imposition of a compensatory fine) and *Wise* established and ratified three principles under the (now-subsumed) "recoverable in a civil action" construct. First, the analogous "civil action" for theft is conversion. Second, the measure of conversion damages—and, hence, for restitution for theft—is "market value." And, third, the relevant "market" is determined by reference to the time and place of the theft.

Most recently, in *Labar,* 259 Or App at 335, we applied those principles in a closely similar case. In *Labar,* the defendant was convicted of a number of crimes arising from robberies of Oxycontin from a pharmacy. *Id.* The trial court ordered the defendant to pay restitution to the pharmacy in the amount of $36,911.89, which was based on the pharmacist's testimony of the retail value of the stolen Oxycontin tablets. *Id.* at 336. On appeal, the defendant—like defendant in this case—contended that the court erred in awarding the retail cost of the stolen product, because, while the pharmacy would have been "made economically whole if it were paid the cost to replenish [the stolen property], * * * plus any lost profits that it suffered," "[t]he state

---

[3] In *Callaghan,* the discussion of "market value" pertained not to restitution but, instead, to the (arguably qualitatively) different matter of the proper measure of the value of stolen property for a classification of the offense for charging purposes—*e.g.,* a person commits the crime of first-degree theft if the total value of the property is $1,000 or more, ORS 164.055. *See* 33 Or App at 58.

[4] Given our conclusion in that regard, we did not reach and address the state's alternative contention that, for purposes of imposition of a compensatory fine, so long as the victim had suffered *some* economic damages, "the court could have imposed a compensatory fine in any amount up to the statutory maximum." *Id.* at 475.

did not present evidence by which to make those calculations." *Id.* We affirmed. In so holding, we reiterated that the amount of restitution for theft was determined by the economic damages that the victim could recover against the defendant in a civil action for conversion. *Id.* at 336-37 (citing *Onishchenko*, 249 Or App at 476).[5] We further noted that the proper "measure of damages for the conversion of personal property is the reasonable market value of the goods converted at the time and place of conversion." *Id.* at 337 (internal quotation marks omitted). We concluded that, "[i]n light of the record, the trial court did not err in finding the market value of the Oxycontin tablets to be their retail value nor in awarding restitution to [the pharmacy] on that basis." *Id.*[6]

We return to this case and "review [the] award of restitution to determine whether it was imposed consistently with statutory requirements." *Wise*, 150 Or App at 455. In doing so, we sustain the trial court's predicate findings if there is any evidence in the record to support them. *State v. Jordan*, 249 Or App 93, 96, 274 P3d 289, *rev den*, 353 Or 103 (2012).

Here, the trial court—consistently with *Wise*, *Onishchenko*, and *Labar*—proceeded from the premise that Macy's was entitled to restitution corresponding to "the reasonable market value" of the stolen property, the jeans, "at the time it was taken." *Wise*, 150 Or App at 455. Further, there was evidence—specifically, that the jeans were stolen from shelves in retail space, where they were available to customers for sale—to support the court's determination that "the market in which the goods were being traded" was

---

[5] Defendant contends that *Labar* was wrongly decided because of that reference to the "recoverable in a civil action" construct. However, as noted above, 269 Or App at 25-26, any recovery under that construct would necessarily be encompassed within the expanded "economic damages" construct. *See Ramos*, 267 Or App at 176 n 7 (disavowing that aspect of, *inter alia*, *Labar*, but not overruling the holdings of those cases).

[6] In so holding, we rejected the defendant's contention that the state's failure to present proof pertaining to lost profits precluded reference to the retail value measure of recovery and restitution. *See Labar*, 259 Or App at 337 n 2 (noting that authority that the defendant invoked "concerns the recovery of lost profits as damages for breach of contract and is inapposite" to the award of restitution, given that the referent civil action would be in tort, for conversion).

"the retail market."[7] Accordingly, the trial court did not err in determining that the market value of the stolen goods was their retail value and, consequently, in awarding restitution for that amount.

Affirmed.

---

[7] Defendant argues that this case is distinguishable from *Labar* because, unlike in that case, where there was no evidence of the wholesale value of the stolen Oxycontin, there was such evidence with respect to the jeans here. That distinction is, however, immaterial, because, to the extent that Macy's could be deemed to be operating in both the retail and wholesale markets, there was evidence to support the trial court's determination that, with respect to these particular goods, given the time and place of their loss, the relevant market was the retail market.