Argued and submitted December 10, 2019, affirmed July 29, 2020

STATE OF OREGON
*Plaintiff-Respondent,*

*v.*

LARRY JAMES WILDER,
*Defendant-Appellant.*

Yamhill County Circuit Court
17CR76353; A167948

471 P3d 798

Defendant appeals a judgment of conviction for felon in possession of a firearm, ORS 166.270, which followed a separate prosecution for unlawful hunting, ORS 496.992. Defendant assigns error to the trial court's denial of his motion to dismiss the possession charge on the basis that the former jeopardy statute, ORS 131.515(2), required the state to bring the charges together. *Held*: Defendant failed to prove that the charges arose from the same criminal episode under any of the relevant tests. The record supports the conclusion that the charges were neither cross-related, nor predicated on conduct directed towards a single criminal objective, nor based on possession of contraband alone. The separate prosecutions were permissible. Accordingly, the trial court did not err in denying defendant's motion.

Affirmed.

Ladd J. Wiles, Judge.

Erik Blumenthal, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jennifer S. Lloyd argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Daniel Norris, Assistant Attorney General.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeVORE, P. J.

Affirmed.

## DeVORE, P. J.

Defendant appeals a judgment of conviction for felon in possession of a firearm, ORS 166.270, which followed a separate prosecution for unlawful hunting, ORS 496.002 and ORS 496.992. Defendant assigns error to the trial court's denial of his motion to dismiss the possession charge on the basis that the former jeopardy statute, ORS 131.515(2), required the state to bring the charges together.[1] We conclude that the charges did not arise from the same criminal episodes under any of the relevant tests. Because separate prosecutions were permissible, the trial court did not err in denying defendant's motion. We affirm.

## I.  BACKGROUND

In reviewing a motion to dismiss under ORS 131.515, we examine the trial court's legal conclusions for errors of law, and we defer to its factual findings to the extent that the record supports them. *State v. Fore*, 185 Or App 712, 716, 62 P3d 400 (2003). Where the court has not made particular factual findings on an issue and the evidence supports more than one decision, we presume that the court decided the facts in a manner consistent with its decision. *State v. Potter*, 236 Or App 74, 82, 234 P3d 1073 (2010) (citing *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968)).

The relevant facts are undisputed. On November 4, 2017, defendant wanted to go hunting. He enlisted his son to drive him in a van to the countryside of Yamhill County. Defendant brought two guns, a rifle and a shotgun. Sometime that day, they parked the van. Defendant took the rifle with him and left the shotgun behind in the van. He shot a deer, which ran onto adjacent private land, where he and his son pursued it. The daughter of the property owner reported the pair to law enforcement for criminal trespass.

---

[1] In relevant part, ORS 131.515 provides:

"Except as provided in ORS 131.525 and 131.535:

"(1)  No person shall be prosecuted twice for the same offense.

"(2)  No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court."

Yamhill County Sheriff Deputy Twitchell responded to the scene. When he arrived, he learned from dispatch that defendant and his son had returned to their van nearby and were in an altercation with the property owner and her daughter. Twitchell drove about 100 yards in that direction. He spotted the van oncoming. He quickly turned the patrol vehicle around and initiated a traffic stop.

During the stop, Twitchell ran a criminal history check and learned that defendant had felony convictions from the 1990s. Twitchell observed a shotgun and a rifle in the van's cargo area. Defendant admitted that he shot the deer with the rifle, which he borrowed from a friend. Twitchell did not regularly deal with hunting violations, so he called for the assistance of an Oregon State Fish and Wildlife trooper. The trooper cited defendant for hunting out of season, and Twitchell placed defendant under arrest for felon in possession of a firearm.

On November 27, 2017, the state charged defendant by information for unlawfully hunting deer during a closed season, ORS 498.002 and ORS 498.992. On November 30, 2017, a grand jury returned an indictment for felon in possession of a firearm, ORS 166.270. Neither charging instrument described the weapons involved.

In March 2018, defendant pleaded guilty to the unlawful hunting charge, admitting that he had been "hunting deer during a closed season." The trial court warned defendant that his admission could be used against him in the subsequent trial for felon in possession of a firearm. Defendant indicated that he understood, and he entered the guilty plea. As context for sentencing, the state described defendant's conduct as follows:

"This occurred in early November. The sheriff's office called OSP into an area for the defendant's shooting a deer and then went on private property without permission. Defendant said he shot the deer. It ran onto other private property. They got permission to get it. But then, later, the homeowner came back, and he was hunting with his son. There ended up being some sort of altercation about the deer. Ultimately, though, it was determined that his tag was expired. It had expired the day before. When trooper

asked him about it, he said he thought it had ended today. However, the season had closed on the third. This was on the fourth. Additionally, he was separately charged with being a felon in possession of a firearm. And that would be based on his criminal history."

A bench trial for the felon in possession of a firearm charge followed in May 2018. Defendant moved for dismissal on former jeopardy grounds, claiming that the charge involved the same criminal episode as the wildlife violation. He argued that his possession of the firearm was necessary to, and therefore inseparable from, his unlawfully hunting. The state countered that the offenses involved distinct criminal episodes, as defendant had completed the crime of unlawful hunting when he shot the deer, and some time elapsed before the traffic stop in which he admitted to possessing the guns. Further, the state argued, although defendant shot the deer with a rifle, he also possessed a shotgun, which could, without mention of hunting, comprise the possession offense. The court took the issue under advisement, and the trial proceeded.

The state called Twitchell to testify to the facts recited above. On cross-examination, he testified that the report of trespass included information that the men were hunting and likely had guns. Defendant testified that the shotgun was a family heirloom, passed down from his father, which he intended to give to his son. He claimed that they brought it along for bird hunting, but no opportunity to shoot birds arose, and it stayed in the van at all times.

In closing, the state argued, in part,

"[Defendant] not only admitted that the firearms were his and belonged to him, but the sole purpose of having his son come pick him up was to go hunting and he admits that the firearms belonged to him. So certainly, he was in custody, possession, or control over those weapons."

At the conclusion of the trial, the court found defendant guilty. It explained:

"I think [defendant] clearly had the right to exercise control over the shotguns and the rifle. The shotgun, in particular, was, even he testified that, well, his intention was to give it to his son later on so it's his gun.

"There's a good question there about its operability. * * *

"And in this instance, I think I can fairly infer from the reason the gun was in the car to begin with, according to the Defense, an acknowledgement to the deputy in testimony here today was to shoot birds or to go on a hunting. So by all appearances, it's a functional firearm and that's why it's retained, that's why it's brought on his trip, that's why it's going to be handed down.

"So, I find beyond a reasonable doubt that the elements are satisfied for a finding of guilt on the charge of being a felon in possession of a firearm."

In a subsequent hearing, the trial court ruled on defendant's former jeopardy motion. It determined that, because "the hunting charge preceded the traffic stop wherein the shotgun was found, and the shotgun is a different gun than that which was used in the hunting case," a "complete account of the felon in possession of a firearm charge would not necessarily include details of the unlawful hunting charge." The court concluded that no former jeopardy violation occurred and denied defendant's motion to dismiss on those grounds.

Defendant appeals that ruling, arguing that the state violated ORS 131.515(2) by impermissibly forcing him to answer twice for the same conduct in the separate successive prosecutions. Defendant bears the burden of proving that former jeopardy claim. *Potter*, 236 Or App at 81. He offers multiple theories to do so. First, he argues that charges are cross-related, noting that his unlawful hunting could be—and, in fact, was—raised in the possession trial, showing that prosecuting of one charge required litigating details of the other. Second, he contends that the hunting and possession charges were part of the same criminal episode because the possession was continuous and uninterrupted, closely linked in time and place to the hunting, and directed at the same greater criminal objective of a father-son hunting trip. Third, defendant asserts that, because the firearm offense was predicated on possession of contraband, the state was required to show that it was "wholly unrelated" to the hunting violation to "tease apart" the charges. We address each argument in turn.

## II.   FORMER JEOPARDY

Under Oregon statute, "[n]o person shall be separately prosecuted for two or more offenses based upon the same criminal episode." ORS 131.515(2).[2] The Oregon Supreme Court has articulated three tests for determining when, for the purposes of that statute, a prosecution for one charge will bar later prosecution of another charge: (1) whether the charges are "cross-related," (2) whether the charges arise from conduct involving the "same criminal objective," or (3) whether the charges involve possession of contraband at the same time and place. *State v. Dulfu*, 363 Or 647, 655, 669-70, 426 P3d 641 (2018). Defendant's theories for reversal track those three tests. As we explain below, none of the tests, when applied here, supports a conclusion that the offenses were based upon the same criminal episode under ORS 131.515(2).

### A.   *Cross-Related Test*

The first test for whether the prosecution of one charge will bar the prosecution of another charge entails examining whether the two charges arose out of the same "act or transaction," that is, whether they are "cross-related." *Id.* at 655. We determine whether the charges are "'so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge.'" *Id.* (quoting *State v. Boyd*, 271 Or 558, 563-64, 533 P2d 795 (1975)). "'We construe this test of interrelated events as necessitating joinder only where the facts of each charge can be explained adequately only by drawing upon the facts of the other charge.'" *Potter*, 236 Or App at 82 (quoting *Boyd*, 271 Or at 566). "'[I]f a complete account of one charge necessarily includes details of the other charge, the charges must be joined to avoid a later double jeopardy defense to further prosecution.'" *Id.* (quoting *Boyd*, 271 Or at 566).

The test may be simply stated: Charges are cross-related where details of one charge comprise a necessary

---

[2] The other elements of a former jeopardy claim, that the prosecutor knew of both offenses when the first prosecution commenced, and that venue was proper in a single court, are not at issue in the current case. *See* ORS 131.515(2) (elements of a former jeopardy claim).

component of another. But illustrations still help. For instance, we previously concluded that ORS 131.515(2) required joinder for the charges of pointing a firearm at another and felon in possession of a firearm arising from the same domestic disturbance. *State v. Gardner*, 71 Or App 590, 596, 693 P2d 1303 (1985). We reasoned that, in order for the defendant to have pointed the firearm, he necessarily had to possess it, and that possession of the firearm, in turn, formed the foundation for the felon in possession charge. *Id.* The prosecutor attempted to delineate the charges by asserting that the felon-in-possession charge was based on the subsequent discovery of the firearm in defendant's vehicle, but we concluded that the charges were nonetheless "so closely linked in time, place, and circumstance that a complete account of one charge cannot be related without relating details of the other." *Id.* at 596, 596 n 2. We held that pointing and possessing the gun were "so inextricably interrelated" that ORS 131.515(2) required joinder of the charges. *Id.* at 596.

In contrast, we determined that the claims were not cross-related in *Potter*, 236 Or App 74, where an adequate account of one charge did not necessarily entail details of the other. That case involved a defendant against whom the victim had obtained a restraining order. *Id.* at 76. On the day of the charged events, the defendant approached the victim at a park. *Id.* That evening, the defendant appeared again outside the house of the victim's friend. *Id.* at 77. The two argued. *Id.* At some point, when the victim attempted to leave, the defendant grabbed her by her throat and threw her against a porch post. *Id.* The defendant was subsequently indicted on three counts of assault, as well as contempt of court for disobeying the restraining order "by having personal contact" with the victim. *Id.* In an effort to keep the defendant in custody, the state prosecuted him for contempt before the trial on the assaults. *Id.* at 78-79.

Following that conviction, the defendant moved to dismiss the assault charges on former jeopardy grounds. *Id.* at 80. The trial court granted his motion. *Id.* The state appealed, arguing, in relevant part, that the contempt was not a part of the same criminal episode as the assaults. *Id.* at 81. Although we ultimately affirmed, we concluded that the

claims were not cross-related, because a complete account of either charge would not necessarily require details of the other. *Id.* at 84. The state could have shown defendant violated the court order by proving that the defendant approached the victim at the park or by arguing with the victim on the porch. *Id.* at 85. Conversely, the state could have proved the assault without mentioning the park or initial contact at the residence. *Id.* We observed, "Although it might provide helpful context, it was not necessary for the state to prove the existence of the restraining order in prosecuting the assault charges against defendant." *Id.* Because the charges were not "*necessarily* cross-related," and because "it was *possible* for the state to prove" each offense without facts of the other, the case did not implicate former jeopardy under the first test. *Id.* at 84 (emphases in original).

Similarly, we conclude that the charges were not necessarily cross-related in this case. A complete account of the unlawful hunting charge did not necessarily include details of the felon in possession of a firearm. Defendant shot a deer out-of-season with a rifle. The shotgun played no part in that crime. By defendant's own account, he brought the shotgun for a purpose other than deer hunting; he brought it to hunt birds in the event that they would see any. Defendant did not bring the shotgun when he left the van to hunt deer. He stowed it in the van, and that is where it remained the entire time. Likewise, the state could prove that defendant was a felon in possession of a firearm without relating details of the conduct constituting unlawful hunting, his using a rifle to shoot a deer. Twitchell pulled the van over on suspicion of trespass. He observed the shotgun, which defendant admitted to owning. Although the report of trespass, which provided probable cause for that stop, indicated that the men had been hunting, the state did not necessarily need to present evidence of defendant actually shooting a deer to prove that defendant possessed the shotgun.

Defendant urges us to conclude that the charges are cross-related because his having been hunting tended to show that he possessed a firearm, and vice versa. He contends that he would need to inquire into surrounding facts of the hunting incident to mount a defense to the possession

charge, and that the court relied on the fact that he took his guns to go hunting to find that he possessed a firearm that was operational.[3] However, charges need not be joined "simply because factual details of one charge are *admissible* at trial on the other charge." *Id.* (emphasis in original); *see also State v. Nguyen*, 95 Or App 653, 656-57, 771 P2d 279, *rev den*, 308 Or 142 (1989) (same). Although defendant's hunting might "provide helpful context," it "was not necessary" for the state to prove the elements of felon in possession. *Potter*, 236 Or App at 85. Because "it was *possible* for the state to prove" felon in possession of a firearm without relating details of shooting a deer off-season, the claims are not cross-related. *Id.* at 84 (emphasis in original).

We recognize that *Gardner* would be significant here had the possession charge involved the same firearm as defendant used to hunt deer, the rifle.[4] That alternative prospect, akin to *Gardner*, would have involved an offense that necessarily involved the firearm that the defendant soon after possessed in a vehicle. In the case at hand, however, defendant's possession charge involved a different weapon. Consequently, neither charge required facts of the other, and the charges are not cross-related.

B.   *Same-Criminal-Objective Test*

The second test for former jeopardy is the "same criminal objective" test. *Dulfu*, 363 Or at 655. It focuses on the statutory definition of a "single criminal episode." It asks whether the charges involve "continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective," ORS 131.505(4). *Id.* at 670. Several factors may

---

[3] That a firearm be functional is not a required element. ORS 166.210 provides that a firearm "means a weapon, by whatever name known, which is designed to expel a projectile by the action of power." That definition formerly included a requirement that the weapon be "readily capable of use as a weapon," ORS 166.210 (2007), *amended by* Or Laws 2009, ch 610, § 4, *i.e.*, "operable," *State v. Sumpter*, 227 Or App 513, 206 P3d 1088 (2009).

[4] Twitchell's probable cause statement indicates that he arrested defendant for felon in possession of a firearm based on the rifle, and it makes no mention of the shotgun. However, defendant does not argue that that has any legal significance, and the state ultimately prosecuted the charge based on the shotgun.

bear on that question, including: (1) whether the conduct comprising the offenses is continuous and uninterrupted, (2) the extent to which it is temporally and spatially linked, and (3) whether it is designed to serve a single criminal objective. *Potter*, 236 Or App at 83. Where the record supports the inference that the offenses involved separate acts, the mere fact that evidence is found at the same time and place does not mean the offenses involved continuous and uninterrupted conduct or a single criminal objective. *Welsh v. Taylor*, 284 Or App 387, 397-99, 392 P3d 366, *rev den*, 361 Or 886 (2017).

"[O]ur analysis of whether conduct is directed to the accomplishment of a single criminal objective is an objective determination." *Id.* at 394 (citing Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report § 26, 17 (Nov 1972) (internal quotation marks omitted)). "In determining a defendant's 'criminal objective,' our focus is on the 'singleness' of a defendant's criminal objective based on the defendant's criminal conduct." *Id.* at 394 (quoting *State v. Cloutier*, 286 Or 579, 596, 596 P2d 1278 (1979)). A "critical factor in treating criminal conduct as a unitary event is *not* the coincidence of time, place, and circumstance, *but the resulting inference* that the conduct is directed to the accomplishment of a single criminal objective." *Id.* (emphases in original; ellipses and internal quotation marks omitted). The state cannot parse criminal objectives too finely, such as by distinguishing between various motivations behind a particular course of conduct. *State v. Witherspoon*, 250 Or App 316, 324-25, 280 P3d 1004 (2012). At the same time, it can divide objectives by immediate goals, as opposed to overarching and distant ones. *Welsh*, 284 Or App at 399-400.

Our analysis in *Witherspoon* is illustrative. That case involved an incident of domestic abuse that spanned several hours, in which the defendant shook the victim in their living room, pulled a knife out of a drawer in their kitchen, and threw the victim against a bookshelf in their child's room. The state charged defendant with fourth-degree assault and menacing. *Witherspoon*, 250 Or App at 318-20. We concluded that the charges arose from a single criminal episode. We observed that the charges involved

continuous and uninterrupted conduct, linked by the victim attempting to flee the abuse by running from one room to the next, and the defendant pursuing her, thwarting her escape, and resuming the abuse. *Id*. at 323-24. We determined that the record contained no evidence to show an interruption. *Id*. We also noted that the charges shared a common criminal objective of harassing and injuring the victim through physical and emotional abuse; although, over the course of the night, the defendant was reacting to different alleged actions by the victim—failing to wake him, leaving a window open, searching his office, committing marital infidelity, engaging in illegal drug use, and attempting to leave the house with their child—we cautioned against "improperly pars[ing] defendant's criminal objective." *Id*. at 325. We concluded that, because the charges arose from continuous and uninterrupted conduct that was joined in time, place, and circumstances and that shared a common criminal objective, it would have violated double jeopardy principles to prosecute the defendant separately for them. *Id*. at 326.

In *Welsh*, we distinguished *Witherspoon* and reached the opposite result. In that case, police, while executing two warrants, discovered in the petitioner's residence large quantities of heroin in separate backpacks, methamphetamine, scales, packaging materials, detailed drug records, $3,000 in cash, and six firearms. 284 Or App at 389. The petitioner told police that he had been selling methamphetamine, and that he had received the firearms as collateral or trade for drugs. *Id*. The petitioner was indicted for several offenses, and, pursuant to negotiations, pleaded guilty to two drug-delivery offenses, one based on methamphetamine and the other on heroin, as well as three counts of felon in possession of a firearm. *Id*. The trial court imposed two consecutive sentences of 45 months' imprisonment for each drug crime. *Id*. at 390. It then sentenced the petitioner to 30 months' imprisonment for each firearm charge, to be served concurrently with one another but consecutively with the drug-crime sentences. *Id*.

The question eventually came before us whether the petitioner's convictions involved the same criminal episode, such that the sentences could not be imposed

consecutively.[5] *Id.* at 393-94. The petitioner argued against a narrow construction of a single criminal episode, contending that his conduct involved the one criminal objective of running a drug-dealing enterprise. *Id.* at 395. He claimed that separating the criminal objectives for each crime constituted improper parsing under *Witherspoon.* *Id.* at 395, 399. The petitioner noted that the police discovered the evidence on the same date at the same location, and that his conduct was continuous and uninterrupted. *Id.* at 395.

We disagreed with that analysis. We explained that, where the record contains evidence that the offenses involved separate acts, the mere fact that evidence is found at the same time and place does not mean that the offenses involved continuous and uninterrupted conduct. *Id.* at 397-99. For that proposition, we relied on two cases: *State v. Collins*, 100 Or App 311, 313-14, 785 P2d 1084 (1990), *overruled on other grounds by State v. Torres*, 249 Or App 571, 277 P3d 641 (2012), in which we held that two counts of unlawful possession of firearm, based on two handguns, placed under the driver and passenger seats of a car, respectively, were not directed at a single criminal objective, as "the handguns were two separate objects, and there was evidence, such as placement of the guns in different parts of the pickup, that they were concealed by separate acts"; and *State v. Padilla*, 118 Or App 122, 124, 846 P2d 437 (1993), in which we concluded that, "[f]inding more than one weapon in a single location is not the equivalent of offenses committed in a continuous and uninterrupted course of conduct," where the evidence indicated that the defendant had allowed his nephews to use the firearms separately. We noted the evidence that the drugs and firearms were placed in different

---

[5] We explained how the issue arose in the sentencing context:

"Under OAR 213-012-0020(2)(a)(B), when a trial court imposes consecutive sentences, it must 'shift to column I' on the criminal history scale for all sentences that the court imposes consecutively to its sentence for the 'primary offense.' The shift-to-I rule applies only when consecutive sentences are imposed for crimes that arise from a 'single criminal episode.' In determining whether the shift-to-I rule applies, we rely on the statutory definition of 'criminal episode' that governs our double jeopardy analysis, ORS 131.505(4)."

*Id.* at 393 (footnote and some citations omitted).

locations throughout the residence, that the firearms were collateral or trade in drug transactions, and that the petitioner had multiple buyers and sellers. *Welsh,* 284 Or App at 398. That record supported the finding that the offenses involved separate acts and that the petitioner's conduct was not "continuous and uninterrupted" and "so joined in time, place, and circumstances" as to constitute a single criminal episode." *Id.*

We also concluded that the record supported the finding that the petitioner's conduct was aimed toward the accomplishment of multiple criminal objectives. *Id.* We reasoned that, although the "petitioner may have formed a distant or overriding goal to 'engage in a drug-dealing enterprise,'" the record supported the "determination that his delivery of each controlled substance and his possession of the firearms were in pursuit of more immediate and separate criminal objectives." *Id.* at 399. We explained, "To conclude otherwise would permit a defendant to convert any number of deliveries over a given period of time to a single criminal episode merely by forming an intent to 'engage in a drug-dealing enterprise' in advance," which "would not make sense." *Id.* (internal quotation marks omitted). We concluded that the petitioner's "generalized argument that we have viewed the term 'criminal episode' more broadly in cases such as *Witherspoon*" failed to show that "those cases would dictate a different result." *Id.* at 400.

Returning to the case at hand, we note that defendant argues that both charges arose from a continuous and uninterrupted course of conduct. He emphasizes, in particular, that his possession of the firearm was a continuing offense. He claims that very little time or space divided the two offenses. Finally, defendant contends, his hunting and possession of the shotgun served a single greater objective of facilitating a father-son hunting trip.

We conclude that the offenses here involved distinct acts and objectives, such that they formed multiple criminal episodes. As in *Welsh*, the evidence supports the trial court's finding that the offenses involved discrete acts. Defendant acquired from separate sources the rifle that he used to

shoot the deer and the shotgun that he possessed; he borrowed the former from a friend; and he inherited the latter from his father. Defendant placed the weapons, as police found them, in the van at different times; he stowed the shotgun in the van before hunting; and he returned the rifle to the van after hunting. The shooting of the deer occurred in a location away from the van, and it involved a different weapon. Time elapsed between defendant shooting the deer and returning to the shotgun. He pursued the deer on neighboring land and had an altercation with the property owner's daughter in the interim. Those were separate acts. As was true in *Welsh*, the fact that police discovered that defendant was felon in possession of a firearm at the same time and place as the other offense does not automatically mean that the charges arose from a continuous and uninterrupted course of conduct.

Indeed, the mere coincidence of time, place, and circumstance does not, in and of itself, make the conduct a unitary event. We must consider whether the conduct is directed to the accomplishment of a single criminal objective. *Welsh*, 284 Or App at 394. Although defendant may have formed an overriding goal to facilitate a father-son hunting trip, the record supports the determination that his unlawful hunting and possession of the shotgun were in pursuit of more immediate and separate objectives, shooting a deer and hunting birds. Defendant's conduct did not demonstrate the singleness of objective seen in *Witherspoon*. Whereas *Witherspoon* involved ongoing abuse directed at one individual, defendant's conduct entailed disparate acts and varying targets. In that respect, defendant's conduct resembled that of the petitioner in *Welsh*, who possessed controlled substances and firearms for the purpose of drug deals with multiple buyers and sellers. Given that similarity, we reject the argument, as we did before, that the state engaged in improper parsing of objectives by separating charges of that nature. To conclude otherwise would allow a defendant to convert numerous wildlife violations or firearm offenses into a single criminal episode by merely forming a broad intent to foster family bonding through hunting. For the purposes of the former jeopardy, a criminal objective is not abstracted to that level of generality.

Under the criminal objective test, the record supports the trial court's conclusion that the charges arose from separate criminal episodes. Defendant's conduct entailed discrete acts that were directed to the accomplishment of distinct criminal objectives. Although defendant's possession of a firearm was a continuing offense which was discovered along with the hunting violation, and although he possessed the shotgun in furtherance of a broad and overarching goal to cultivate a father-son relationship through hunting, the conduct was not continuous and uninterrupted and so joined in time, place, and circumstances as to be directed to the accomplishment of a single criminal objective.

C.   *Possession of Contraband*

The third test for former jeopardy addresses charges based on possession of contraband in particular. *Dulfu*, 363 Or at 670. In such cases, mere "possession of multiple items of contraband at the same time and place constitutes a 'single episode.'" *Id.* (citing *Boyd*, 271 Or at 570-71). That is because possession charges are "not based on separate 'relatable events,' but rather a 'single condition.'" *Id.* at 671 (quoting *Boyd,* 271 Or at 570). Further, the "criminal code treats the fact of possession as a criminal act of continuing nature." *Boyd*, 271 Or at 570. Thus, "[o]nce unlawful possession of goods, without more, is recognized as criminal conduct, there is no reason for fragmenting the criminal conduct into as many parts as there are different items of property, however acquired." *Id.* at 570-71. In contrast, where the defendant is charged with actual acts culminating in the possession, multiple prosecutions are allowable. *State v. Oliver*, 26 Or App 331, 334-35, 552 P2d 562 (1976).

Unlawful possession of contraband, alone, constitutes a single criminal episode, even where it involves discovery of multiple items in one time and place. *Dulfu*, 363 Or at 671. For example, in *Boyd*, 271 Or at 560, police discovered amphetamines and a stolen television during a search of the defendant's house. The state indicted the defendant separately for theft and criminal activity in drugs. *Id.* The defendant was tried for theft based solely on her having retained and concealed the television at the time of the search. *Id.* at 561. Following an acquittal, she moved to dismiss

the drug-crime indictment on former jeopardy grounds, the trial court granted that motion, and the state appealed. *Id.*

The Supreme Court held that simultaneous possession of two distinct types of contraband at the same time and place constitute a unitary act or transaction, requiring joinder of charges. *Id.* at 570-71. The court explained, "[h]ad defendant been charged with the actual theft of the television set on one occasion and the illegal drugs at another time, it would be clear enough that the events would be unrelated and therefore obviously not unitary." *Id.* at 570. However, that was not what occurred; "the state did not charge defendant with the acts which eventually culminated in defendant's possession of the television set and the drugs." *Id.* Instead, the charge was "a single charge of illegal possession of goods at one time and place." *Id.* Accordingly, the court concluded, treatment of the charges as a single episode was proper. *Id.* at 571.

Consistent with those principles, we determined, in *Oliver*, that separate prosecutions were permissible where the state prosecuted the defendant for the conduct underlying his possession of contraband. 26 Or App 335. Police discovered a steer and an elk hanging side-by-side in the defendant's shed. *Id.* at 331. The defendant and an accomplice admitted to officers that they had shot the steer, put it in their car, and then, while driving, had "come upon and hit an elk." *Id.* The two were cited, tried, and convicted of illegal possession of elk. *Id.* Two months later, the state indicted the defendant for theft of the steer. *Id.* The trial court dismissed that indictment on the ground of former jeopardy, and the state appealed. *Id.*

We concluded that the two offenses did not arise from the same criminal episode. *Id.* We explained that, "if the theft charge were based on defendant's mere possession of the steer, *i.e.*, its retention and concealment," then the "possession of the steer and the possession of the elk at the same time and place would constitute a single condition which, for the purposes of the *Boyd* test, is the equivalent of relatable events as far as barring multiple prosecutions." *Id.* at 334-35. However, the circumstances of the case were "entirely different" from those in *Boyd.*, in that the charges

shared no close link in time and place, and the "defendant was charged with the act which culminated in his possession of the steer, *i.e.*, theft." *Id.* For that reason, prosecution for the elk possession did not bar the prosecution for livestock theft. *Id.* We reversed and remanded. *Id.* at 335.

We draw a similar distinction in the case at hand, concluding that prosecution for unlawful hunting did not preclude subsequent prosecution for felon in possession of a firearm. Significantly, the state based the unlawful hunting charge on defendant's conduct, not mere possession of contraband. Defendant admitted to Twitchell that he had shot a deer with his rifle. The state charged defendant with "hunting deer during a closed season," and defendant pleaded guilty to that charge. At defendant's plea hearing, the state described that conduct, namely, "defendant shooting a deer" and attempting to "get it," despite the fact that "the season had closed."[6] This case would more closely resemble *Boyd* if the charges were predicated on defendant's mere possession of the deer and weapons. As in *Oliver*, however, the state prosecuted defendant for the act that culminated in the offense. For that reason, we conclude that the two offenses did not arise from mere possession of contraband at the same time and place.

## III.   CONCLUSION

We conclude that defendant failed to prove that his offenses of unlawful hunting and felon in possession of a firearm involved conduct arising from a single criminal episode. The record supports the conclusion that the charges were not cross-related, predicated on conduct directed towards a single criminal objective, or based on possession of contraband alone. The state did not violate ORS 131.515(2) in prosecuting the charges separately, and the trial court did not err in denying defendant's motion to dismiss on those grounds.

Affirmed.

---

[6] In the first prosecution, the state never specified the weapon with which defendant unlawfully hunted. It is undisputed, however, that he shot the deer with the rifle.